CASWELL, ADMIN'X, APPELLANT, *v.* HILL & ALS. APPELLEES.

The money or furniture owned by a woman before marriage, does not, in this State, become the absolute property of the husband after marriage, unless he reduce it to his possession.

Where furniture was in part bought by the wife before marriage, and in part by her with her own money which the husband had not reduced to his possession, after marriage, it does not necessarily follow that the using, occupying and enjoying of such furniture in the family by both husband and wife for several years, in the ordinary way of using such furniture, would operate as a reduction of the same to his possession, by the husband.

In the absence of any act or claim by the husband, aside from such ordinary use in the family, it would be mainly a question of intention; for in order to reduce such property to his possession, it would be necessary that the intention should exist, and that this intention should be carried into execution.

A gift of a musical instrument by a father to his daughter-in-law, will not be valid as against existing creditors of the father.

When an administratrix appeals from a decree of the judge of probate settling an administration account, and states her reasons of appeal, she will be confined to the matters thus stated, but the appellee may go into the whole settlement and have any errors therein corrected.

Where a wife bought land before marriage, taking the deed to her sole and separate use, and the husband built a house thereon with their joint earnings after marriage, by her consent, but without any understanding that he was to have any separate interest therein, or claim thereto, if no actual fraud be intended between them, it will be considered and treated as an allowance made to the wife, and she will hold the same as against the husband and his heirs, and as against subsequent creditors of the husband.

But if the husband erect a building on land of the wife, held to her sole and separate use, at the expense of existing creditors, they may hold the same as against the wife, and she may be charged with its value, as administratrix of her deceased husband's estate, when necessary to pay the debts of such existing creditors.

When an administratrix appeals from the decree of the judge of probate settling the administration account, and succeeds in part of her causes of appeal, and fails in part, and is in the end charged with a larger balance than was found against her by the judge of probate, this court may properly order that neither party recover costs of the appeal.

THIS is an appeal from the decree of the judge of probate, settling an administratrix account. The facts appear in the opinion.

*Small*, for administratrix, appellant.

*Christie*, for creditors of the estate, appellees.

SARGENT, J. This is an appeal from a decree of the judge of probate for Rockingham county. The appellant, Sarah W. Caswell of Northwood, in said county, is the widow of Asa Caswell, late of said Northwood, who died on the 15th day of April, 1864. On the 11th day of May, 1864, she was appointed administratrix of the estate of her deceased husband, and took upon herself that trust according to law.

The estate being represented as insolvent, on said 11th day of May a commissioner was appointed, who, on the 11th day of November, following, presented a list of claims as allowed by him against said estate, and his report was accepted. These claims were in favor of said Jonathan Hill and ten others, and amounted in the whole to the sum of $1214.12.

On the 15th day of June, 1864, said administratrix returned an inventory of the estate of said Caswell, the same consisting of personal property which was appraised at the sum of $287.38.

At a court of probate holden at Exeter, in said county, on the 9th of August, 1865, she settled her account as administratrix, as aforesaid, charging herself with the amount of the inventory, as aforesaid, and discharged herself by various items paid out, all amounting to $257.50, leaving a balance in her hands upon her own showing, of $29.88. At said court, said Jonathan Hill and seven others of said creditors, the appellees in this case, claimed to charge said administratrix, in the settlement of her said account, with *one dwelling house*, situate in said Northwood, where the said administratrix now lives, valued by them at $1600, *one stable*, situate in said Northwood, on the same lot, near and with said dwelling house, valued by them at $300, and also with certain articles of personal property, enumerated in schedule A., consisting of beds, bedding, chairs, carpets, sofas, tables, crockery and other ware,

and other household furniture, amounting to $170.75, together with one musical instrument, at $50, in all, $220.75.

The judge of probate, in his decree, charged said administratrix with the goods and chattels, enumerated in said schedule A., as belonging to the estate of said deceased husband, in addition to those contained in said inventory, but did not charge her with the value of said buildings, leaving a balance in the hands of said administratrix of $29.88 and $220.75—$250.63.

Whereupon, the said administratrix, claiming to own all the goods contained in said schedule A., except said musical instrument, which she claims belongs to her daughter, and being aggrieved by said decree, took her appeal to this court and assigned her reasons of appeal, and notice of said appeal was duly published. We think, upon examination, that the reasons of appeal are sufficient, and that said notice, as published, was in proper form.

An auditor has been appointed in this case to report the facts to the court, from whose report we learn that said administratrix was married to said Asa Caswell on the 3d day of July, 1853. Before her marriage she had had one daughter, (born September, 1850,) and she had worked in the mills and elsewhere, and had thus earned some eight hundred dollars, which she had laid up at interest, before her marriage. This daughter went with her into the family of said Asa Caswell at the time of her mother's marriage, and continued a member of the same until the death of said Caswell, receiving her board and clothing from the common stock, and helping in the family as she was able.

A part of the furniture mentioned in schedule A., was bought by the administratrix before marriage with her own money, and carried to their place of residence immediately after the marriage; and another portion of it was purchased by the administratrix soon after her marriage, with her money, which had never come into the possession of her said husband, and this was taken to their residence immediately; this comprehended all the furniture in said schedule A., except one sofa, which was a present to the administratrix, after her marriage, from a brother of hers. This was moved to their residence, and the auditor finds that all said goods and chattels were in the possession, use, occupation and enjoyment of said Caswell and his wife, this administratrix, after the same were brought to their residence, in the ordinary way of possessing, using, occupying and enjoying such property, up to the time of said Caswell's death. Aside from the ordinary and common use of said goods in the family by husband and wife, there was no act or statement of either of them bearing upon the ownership of the property previous to June 19, 1860, when the furniture and clothing in the house occupied by them, together with the buildings, was insured against fire in the name of the wife, and as her property, though it was not proved that said Caswell had knowledge of that fact.

In May, 1861, an officer came with a writ against Caswell, with instructions to attach real estate, to whom said Caswell then stated in presence of his wife, that he had no property then liable to attachment, except a wagon and a harness, that all the property in the house belonged

to his wife, and that all the real estate was hers. Said Caswell, the same day, stated to another person that all there was in the house belonged to his wife, except a few things which he mentioned, none of which were included in said schedule A. After this, said Caswell made similar statements to the same officer, and to various other persons, and was accustomed to speak of these things in the house, as well as the real estate, as his wife's, and it did not appear that said Caswell had ever done any act in reference to the ownership of this property in question, aside from using it in the house as above stated.

These declarations of Asa Caswell were objected to upon the ground, that, at the time when, and in the circumstances under which, they were made, such declarations could not affect the character of previous acts, in regard to said property. We think the declarations competent as tending to show a disclaimer of ownership in property in his apparent possession, nor do we find that he had done any acts inconsistent with such declarations, which could or would be affected by them. The time and circumstances are to be considered in determining the weight that should be given to this testimony.

There was no ante-nuptial contract between Caswell and his said wife, nor did she hold her money earned before marriage, or this personal property under any special statute, nor was it given or conveyed to her in any way to her sole and separate use, but it was acquired by her in the ordinary way and held by the ordinary tenure.

Upon these facts it is claimed by the creditors, the appellees, 1st. That this money and property held by the administratrix, at the time of her marriage, became at once the property of the husband, upon the marriage; or, if not so, then 2d. That this property being household furniture, was reduced to possession by the husband in his life-time, so as to become his, and so that his creditors are now entitled to the same, as against this appellant.

The first position thus taken, would, no doubt, be correct at common law, and according to some of the earlier decisions in this State. But the more recent decisions in this State, sustained as they are held to be by the whole tenor of recent legislation here, hold that the money and other goods and chattels owned by the wife at the time of marriage, stand upon substantially the same ground as her choses in action, and do not become the absolute property of the husband until they are reduced by him to his possession. *Coffin* v. *Merrill*, 22 N. H. 359; *Cutter* v. *Butler*, 25 N. H. 343; *Hall* v. *Young*, 37 N. H. 134; *Jordan* v. *Cummings*, 43 N. H. 137; *Hutchins* v. *Colby*, 43 N. H. 159; *Russ* v. *George*, 45 N. H. 467; *Hoyt* v. *White*, 46 N. H. 45; *George* v. *Cutting*, 46 N. H. 130.

The first ground taken by the appellees must, therefore, be overruled. Can the second position be sustained upon the facts in this case? The auditor finds that the money which the wife had at the time of the marriage, must come to the possession of the husband; was the household furniture thus bought by the wife before marriage, or with her money after marriage, reduced to possession by the husband in his life-time. It will be seen at once from the nature of the property in question here,

that the use and enjoyment of this property in the family, would necessarily be the same, if used at all, whether the wife claimed to hold it as her separate property, or whether the husband claimed it as his.    The fact that the property was used, occupied and enjoyed as such property is ordinarily used and enjoyed, would not alone determine the question either way, because such use, and enjoyment, and occupancy, would be likely to follow in either case.    In the absence of any act on the part of the husband, aside from such ordinary use and occupancy, it must be mainly a question of intention.    In *Hall* v. *Young*, *supra*, 146, it is said, "whether the husband has thus reduced the property to possession, cannot be made to depend upon any technical rule, or the construction of any particular facts, except that the *intention must exist*, and be carried into execution."    So in *Coffin* v. *Merrill*, *supra*, it is said, that in such cases, "the whole matter should rest, independently of technical rules, upon the intention of the parties."

Looking in this case for evidences of the intent, we find no declarations or acts on the part of the husband, tending to show any intention to claim this property or to reduce it to his possession.    The first declaration he makes is a disclaimer of ownership in 1861, and though this is under circumstances that might awaken suspicion, yet he continues the same disclaimers, not only to officers but to others, and so far as the property in question is concerned, his declarations continued uniform and consistent to the time of his death.    But the wife, by her voluntary act in 1860, about a year before any questions arose concerning her husband's property among any of his creditors, gets this property insured as hers, the policy running directly to her, and though it was not proved that her husband knew of that fact, yet judging from the way in which such business is usually done, it would not be making any very violent presumption to suppose that he knew all about it and consented to the same.    But whether he did or not, her act shows how she understood the matter at that time, and that she intended to hold the property as her own if she could, and from the whole evidence in the case, we are inclined to think that this was her intention all the time, and that the husband assented, and in fact, probably desired to have it so ; that, at least, he never did any act with any intent, or in fact had any intention to convert this property to his possession.    The decree of the judge of probate must therefore be reversed, so far as all the property contained in schedule A. is concerned, except the musical instrument.

In coming to this conclusion, we do not overlook the fact, that, ordinarily, where no special facts and circumstances are shown, the husband would hold the furniture which the wife might bring along with her at her marriage, when he moved her home, because ordinarily the husband provides the home.    But in this case, from the evidence which follows as well as that already stated, it seems that she was some seven years older than her husband, and had property amounting to some $800 or $900, while he had very little and was some in debt ; that she bought land with her own money before marriage, taking the deed in her own name, on which it was designed to make them a home as soon as they could ; that the husband had no home to go to, and only moved in with

his mother till they could build a house; the fact that she kept all her other property and money to her own use, and that after marriage she furnished her husband money to pay his debts with, so that no creditor of his had any right to find fault with that arrangement; in fact, the whole conduct of both parties before and after marriage, tends to satisfy us, that they both intended that she should keep this furniture, as she did her other property, without any interference on his part.

We will next consider the evidence bearing upon the musical instrument. The auditor finds that this instrument "was purchased three or four years ago," that is, three or four years before May, 1866, which would be some time in 1862, or 1863; this was subsequent to the time when the debts of all these creditors were contracted, as shown by the auditor's report.

The auditor finds that $30, towards the price of it, was paid down; that this was money which the wife, the appellant, and his daughter, (born before marriage,) earned after the marriage in binding shoes; that this daughter assisted her mother about her household work, and what the administratrix contributed by binding shoes to earning this $30 was understood and intended by her and the daughter, to be in payment to the daughter for her help. The administratrix thus regarded this $30 as belonging to her daughter alone. At the time of the purchase the administratrix gave her note for the balance, $20, but this note was afterwards paid by·said Asa Caswell; the administratrix testifying that this $20 was given to her daughter by said Asa Caswell, in payment for her services in taking care of his child, while the administratrix was ill. The administratrix could not tell what part of the $30 was earned by herself, or what part by ·her daughter. When we consider that, when the administratrix was married to Asa Caswell, this daughter of hers was only some three years old, that she always lived in the family, and ·was boarded and clothed there, from that time to Caswell's death, in 1864, and at the time of the purchase of this instrument, was only twelve or thirteen years old, we should conclude that all her earnings in binding shoes, and doing other work, would hardly be an equivalent for her board and clothing, ·books and schooling, and that there was really nothing her due, if the balances were properly struck at the age of twelve or thirteen. And so far as the avails of the wife's earnings went to pay for the instrument, they belonged to the husband as much as his own. *Hoyt* v. *White, supra.*

Really, upon all the evidence in the case, it seems to us that here was nothing more nor less than a gift of this instrument by Asa Caswell to this daughter of his wife. She may have been an obedient and dutiful child, and may have deserved well of her father-in-law, so that it would have been every way proper for him, if able to do so, to have presented her with this instrument. But in this case here were many existing debts against Caswell at the time of this gift, and as against such creditors, such gift is held void. We think, in this case, that the decree of the judge of probate ordering that the administratrix be charged with this musical instrument as a part of the estate, was correct, since the

rights of creditors here intervene, though as against heirs only the gift might have been valid.

We come next to the claim of the creditors to charge the administratrix with the dwelling house and stable, as the property of the intestate, in this case.    This evidence was all objected to on the ground, that, the judge of probate having decided this question in favor of the administratrix, and the creditors not having taken any appeal, so far the contest is ended; that this is *res judicata*, and cannot be inquired into here.    But it is held in such cases that though the appellant is confined strictly to the reasons of appeal stated by him, yet the appellees may join to any part of the settlement, and show errors and have them corrected.    *Patrick* v. *Cowles*, 45 N. H. 553.

The auditor finds that on the 16th day of June, 1853, just eighteen days before her marriage to Asa Caswell, the appellant, being then sole, purchased, paid for, and acquired title to a certain piece of land situated in said Northwood, and containing one half acre more or less.    This land was conveyed to her by Benjamin Batchelder and others, *habendum*, "to her sole and separate use, free from the interference or control of any husband she may have."    When she purchased, it was with the intention of having buildings erected thereon at some time, but there was no evidence to show that this was with the knowledge of said Caswell, who became her husband eighteen days after.    After the marriage, July 3, 1853, they moved into a house occupied by her mother, where they lived till the following year free of rent.    In the spring of 1854, they commenced to build a house upon this half acre of land, which was completed in July or August, 1854, when they moved into it; some three or four years after this they erected a stable on the same lot, and these buildings were occupied by them till the death of said Caswell, in 1864, and by the administratrix since his decease.    At the time of the marriage the husband was twenty and the wife twenty-seven years of age.    He was a shoemaker by trade, and having little property but a horse and wagon, and being somewhat in debt.    The wife was worth some $850.

Of this sum she paid $75 for the land before marriage.    After marriage she gave her husband $100 to pay his debts with, and bought her furniture.    In 1858 she invested $300 in real estate, taking the deed in her own name, but not to her sole and separate use, of which the husband had the income while he lived; and the balance, some $200, as the auditor finds, was invested in the house.

The husband followed his trade and hired help and did a considerable business, his wife boarding the help in the family, and doing considerable at binding shoes.    The husband and wife together in that way labored, both were industrious, temperate, economical and ordinarily successful in business, though the husband met with some losses.    From all the evidence we judge that she being the elder, was also the better manager and financier of the two, she keeping her own money after marriage till it was disposed of in the way stated, and for several of the last years of their married life she held and controlled the common purse.    The auditor, without going into any detailed statement of said Caswell's

income and expenditures, finds that he and his wife together, after marriage, earned money amply sufficient, after deducting all expenses and losses, for the erection of these buildings. No separate account was kept of what the wife earned after marriage. All their joint earnings went into common stock, and into the common purse. The evidence, as stated by the auditor, tended to show that there was no understanding or agreement between Caswell and his wife, either before or after the marriage, to erect said buildings upon her land, and thus keep them from his creditors, but that there was an understanding between them, that they would build and thus make a home for the family, and pay as fast as they could. There would seem to be no fraud in the transaction.

From these facts, it is claimed by the creditors that here is a resulting trust to the husband, to the amount of the money thus invested by him in these buildings. But a trust of this kind only results when real estate is purchased, and the deed taken to one, when the purchase money paid for it belongs to another. The payment, at the time of the purchase, of the money belonging to another, is a necessary requisite to this species of trust. 4 Kent's Com. 305. Here, there was, then, no resulting trust. Nor could the husband or his creditors hold any part of these buildings, as betterments, for those can only be claimed, where the party making them did so upon land to which he supposed he had a legal title, which was not the case here.

But it is claimed by the creditors that here was a set of buildings, erected mainly by the husband with his own money, upon land of the wife, and that it must have been by her consent, either express or implied, and that the husband would own the buildings, or most of them, as personal property, of which the creditors may avail themselves, either by removing the buildings, or selling the husband's interest in them. But the assent of the wife is not only necessary, that the buildings may be erected on her land, but there must also be an understanding and agreement on her part, that he may remove them or hold an interest in them separate from the ownership of the land. *Haven* v. *Emery*, 33 N. H. 68; *Dame* v. *Dame*, 38 N. H. 429. This, we are satisfied from the evidence, was not the case here.

And the general rule is, that the erection of a building on the land of another, without such special agreement, that it may remain the property of the builder, makes it a part of the realty, and it thereby becomes the property of the owner of the soil. *Milton* v. *Colby*, 3 Met. 78, 81; *Murphy* v. *Marland*, 8 Cush. 578; *Ashman* v. *Williams*, 8 Pick. 404; *Washburn* v. *Sproat*, 16 Mass. 449.

How far this rule is to be applied in this State, as between husband and wife, and between the creditors of the husband and the wife, has not, that we are aware of, been settled. In Vermont, it would seem that the courts give full operation to the general rule, even as between the wife and the creditors of the husband. *White* v. *Hildreth*, 32 Vt. 265, and *Webster* v. *Hildreth*, 33 Vt. 457, where it is held, there being no actual fraud upon creditors designed, that, if a husband improve his wife's land by erecting buildings upon it and otherwise, without any agreement with her, through trustees or otherwise, that his labor and

money expended thereon shall vest in him any interest therein, or entitle him to any claim against, or compensation from her property, he gains no right or title thereto, which his creditors can reach by attachment, or by the aid of a court of equity.

But we think that while the statutes are liberal in giving to married women rights and privileges in relation to property much more extensive than formerly, that proper care should be taken that, under color of these provisions, frauds should not be allowed to be perpetrated upon the creditors of the husband. If a husband who is not in debt, sees fit to erect buildings upon his wife's land, with his own money, without any arrangement that he is to retain any interest therein, that may be all well enough as between them. It would in such case be properly considered as an allowance made by him for the benefit of the wife, as in case he bought land and took the deed running to her, *Dickinson* v. *Davis*, 43 N. H. 647; and as in that case it is said on page 649 that such a transaction, in case no fraud was intended on the part of the husband, would be valid as against a party who was not a creditor at the time it was done; so here we are satisfied that no actual fraud was intended on the part of the husband, and we think that the erection of the house on land of the wife by the husband, mostly with the avails of their joint earnings, after marriage, which would all belong to the husband, *Hoyt* v. *White*, 46 N. H. 45, may properly be considered as an allowance for the benefit of the wife as against all these creditors, since it appears by the report of the auditor that the debts of all these creditors were contracted after the house was completed. The auditor finds that the wife invested about $200 of her money, which she earned before marriage, and which the husband had never reduced to his possession in this house, and that the balance of the house was built by the husband from the joint earnings of the two after marriage. Those creditors cannot, therefore, hold the house.

But it appears from the auditor's report that the stable was not built until some four years after the house was completed, and that the debts of these creditors, many of them at least, were contracted before the stable was built. We think that the husband cannot properly be allowed to use the money of existing creditors, to erect buildings on his wife's land, for the purpose of making her an allowance, but that the creditors should be allowed in some way to follow and obtain the benefit of the husband's money thus invested by him, for the wife's benefit; that any different holding would be opening too wide the door to fraud and collusion, and would be, under color of protecting the rights of married women, adopting a rule that would work great hardship and injustice against the husband's creditors.

We think, therefore, that this appellant must be charged with the value of the stable. Let a master be appointed to ascertain and report the value of said stable at the time of said Asa Caswell's death, and the administratrix will be charged with the sum of $29.88, which she admits in her hands, and with the value of the musical instrument, $50, and with the value of the stable, to be ascertained by the master; and as

each party prevails in part, and the administratrix is to be charged evidently with as large a sum as by the judge of probate, we think that neither should recover costs of the appeal.